IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EDWARD V. ELLIS, SR. and<br>JENNIFER L. SEIDEL,<br><br>Defendants. | Civil Action No. |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

## SUMMARY

1. This matter involves the fraudulent unregistered offering of securities by defendants Edward V. Ellis, Sr. ("Ellis"), a convicted felon and securities fraud recidivist, and Jennifer L. Seidel ("Seidel"), formerly President of Sederon, Inc. ("Sederon"), a now defunct company that provided home maintenance services, located in Collegeville, Pennsylvania. From at least August 2007 through October 2008, Ellis and Seidel raised approximately $519,500 from more than 50 investors by offering and selling Sederon securities through material misrepresentations and omissions.

2. As part of their fraudulent scheme, Ellis and Seidel told investors that Sederon was a highly profitable and rapidly expanding home maintenance company. The defendants often used high-pressure sales tactics claiming that Sederon would soon be launching an initial public offering ("IPO"), and told potential investors that they would be able to sell their shares in

the open market at a profit of 900 to 1,300 percent. Ellis and Seidel also claimed that shares were limited, or that the current "special discounted price" was about to increase, and thus investors needed to "act fast." In reality, Sederon never pursued an IPO, was never profitable and often failed to generate enough revenue to meet payroll and other expenses.

3. As a result of the conduct described in this Complaint, defendants Ellis and Seidel violated, and unless restrained and enjoined will continue to violate, Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)]; and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

4. The Commission brings this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], to enjoin such acts, transactions, practices, and courses of business; obtain disgorgement plus prejudgment interest; and for other appropriate relief.

5. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

6. Venue in this district is proper under 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, transactions, practices, and courses of business constituting the violations alleged herein occurred within the Eastern District of Pennsylvania.

7. In connection with the conduct alleged in this Complaint, the defendants directly or indirectly made use of the means or instruments of transportation or communication in

2

interstate commerce, or the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange.

## **DEFENDANTS AND RELATED ENTITY**

8. **Edward V. Ellis, Sr.**, age 71, is currently incarcerated, and was previously a resident of Pottstown, Pennsylvania. At all relevant times, Ellis controlled Sederon. In 1994, Ellis pled guilty to wire fraud charges for orchestrating another fraudulent offering of securities and was sentenced to 30 months of incarceration. Based on the same conduct, Ellis consented to the entry of an order in an action brought by the Commission permanently enjoining him from future violations of the antifraud and registration provisions of the Securities Act and Exchange Act.

9. **Jennifer L. Seidel**, age 32, is a resident of Pottstown, Pennsylvania, and is a citizen of Canada. At all relevant times, she was the President and CEO of Sederon and, together with Ellis, oversaw Sederon's operations.

10. On or about November 30, 2010, Ellis and Seidel each pled guilty to criminal charges of mail fraud and wire fraud in connection with the conduct alleged in this Complaint. Seidel also pled guilty to two additional counts of bank fraud in connection with forging certain loan documents. Ellis is currently serving a 57 month prison sentence and was ordered to pay $798,492 in restitution jointly and severally with Seidel. Seidel is awaiting sentencing.

11. **Sederon, Inc.** was a private Delaware corporation formed in August 2007, with its principal place of business in Collegeville, Pennsylvania. Sederon was purportedly formed to acquire two home maintenance companies owned and operated by Ellis: Total SHM, Inc. and THM Team, Inc. These entities entered into contracts with residential homeowners to perform home maintenance in exchange for a monthly fee. Sederon purportedly assumed the obligations

interstate commerce, or the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange.

## **DEFENDANTS AND RELATED ENTITY**

8. **Edward V. Ellis, Sr.**, age 71, is currently incarcerated, and was previously a resident of Pottstown, Pennsylvania. At all relevant times, Ellis controlled Sederon. In 1994, Ellis pled guilty to wire fraud charges for orchestrating another fraudulent offering of securities and was sentenced to 30 months of incarceration. Based on the same conduct, Ellis consented to the entry of an order in an action brought by the Commission permanently enjoining him from future violations of the antifraud and registration provisions of the Securities Act and Exchange Act.

9. **Jennifer L. Seidel**, age 32, is a resident of Pottstown, Pennsylvania, and is a citizen of Canada. At all relevant times, she was the President and CEO of Sederon and, together with Ellis, oversaw Sederon's operations.

10. On or about November 30, 2010, Ellis and Seidel each pled guilty to criminal charges of mail fraud and wire fraud in connection with the conduct alleged in this Complaint. Seidel also pled guilty to two additional counts of bank fraud in connection with forging certain loan documents. Ellis is currently serving a 57 month prison sentence and was ordered to pay $798,492 in restitution jointly and severally with Seidel. Seidel is awaiting sentencing.

11. **Sederon, Inc.** was a private Delaware corporation formed in August 2007, with its principal place of business in Collegeville, Pennsylvania. Sederon was purportedly formed to acquire two home maintenance companies owned and operated by Ellis: Total SHM, Inc. and THM Team, Inc. These entities entered into contracts with residential homeowners to perform home maintenance in exchange for a monthly fee. Sederon purportedly assumed the obligations

under the existing contracts of Total SHM, Inc. and THM Team, Inc. Although Ellis held no official title with Sederon, he controlled Sederon's business and financial operations. Sederon is now defunct.

## FACTS

### Background

12. Following his release from prison in the late 1990s and continuing through 2008, Ellis operated businesses under various names that purported to provide home maintenance services to residential homeowners. In exchange for a monthly fee, the companies performed maintenance for homeowners, including lawn services, gutter cleaning, window washing, driveway sealing, and other minor home repairs.

13. In May 2003, the Pennsylvania Securities Commission ordered Ellis to cease and desist from selling unregistered securities in Chores, Ltd., a home maintenance company owned by Ellis, noting that Ellis had failed to disclose his prior criminal conviction for fraud and that he had previously been permanently enjoined by the Commission. After the issuance of the cease-and-desist order, Ellis continued the home maintenance business under a new name, Total SHM, Inc., and remained the company's President and CEO.

### Ellis and Seidel Form Sederon

14. In or about late 2006, Seidel, who had been working as a real estate agent, began working for Ellis and Total SHM, Inc. In an effort to conceal Ellis' association with Total SHM, Inc., as well as THM Team Inc., Ellis transferred formal ownership of these entities to Seidel and created a new company, Sederon, Inc. In or about June 2007, Seidel became Sederon's President and CEO. Although Ellis no longer held an official position with the new company, his role remained unchanged, and he continued to control Sederon's finances and business operations.

15. In or about August 2007, Ellis and Seidel used the proceeds of a loan to finance a move into larger office space and to hire additional Sederon employees.

**Ellis and Seidel Orchestrate Fraudulent Offering of Sederon Stock**

16. Sederon failed to generate sufficient revenue to meet payroll and other expenses and often failed to deliver promised services under its contracts with homeowners. In an effort to meet their rising debt, defendants Ellis and Seidel began raising cash through the fraudulent sale of Sederon stock to investors. In total, from at least August 2007 through in or about October 2008, defendants Ellis and Seidel sold approximately $519,500 in worthless Sederon stock to at least 54 investors in Pennsylvania, New Jersey, and Connecticut.

17. In furtherance of the fraudulent scheme, Ellis and Seidel directed Sederon employees to solicit stock purchases from investors and promised to pay commissions to them for stock sales. The defendants directed the Sederon telemarketing staff to solicit existing home maintenance customers as well as others. At least one employee's sole responsibility was to make dozens of daily cold-calls to potential investors. None of the Sederon employees had any background or education in selling securities. These employees neither requested nor obtained information about potential investors' backgrounds, finances or prior investment experience.

18. Defendants Ellis and Seidel discouraged their employees from providing potential investors with written materials or other information that might disclose Sederon's questionable financial condition. Instead, the defendants instructed employees to stress the purported strength of the business model and to avoid details that highlighted risk. When an individual expressed an interest in investing, Ellis or Seidel often met with the potential investor to close the sale.

19. In exchange for their investment, individuals received Sederon stock certificates signed by Seidel that reflected their purported ownership of "shares of the Capital Stock of Sederon, Inc."

**Material Misrepresentations and Omissions**

20. As described more fully below, Ellis and Seidel made several materially misleading statements at meetings with potential investors and in follow-up written communications about Sederon's business operations, financial condition, customer base and the company's imminent plans for an IPO.

### False Claims That Sederon Was Going Public

21. Ellis and Seidel made repeated oral and written misrepresentations to investors that a Sederon IPO was imminent. As part of a high-pressure sales strategy, Ellis and Seidel personally met with potential investors and claimed that an IPO would occur within 90 days. They sought to manipulate investors into purchasing shares immediately by claiming that the shares were nearly sold-out or would be doubling in price within days. They also simultaneously lulled existing investors with claims that the IPO had been delayed 180 days or more. However, none of the statements were true, and the specified IPO dates never materialized. Sederon never filed a registration statement with the Commission concerning an IPO and Ellis and Seidel never took any significant steps in that regard, such as obtaining audited financials, typical of a company considering a lawful public offering.

22. Ellis and Seidel also made false and contradictory price projections in conjunction with their misrepresentations about the existence and timing of the purported IPO. While soliciting investors to purchase Sederon stock at $.50 per share, Ellis and Seidel claimed that

6

they could expect to sell their shares following the IPO at $5 to $7 per share, which would represent a 900 to 1,300 percent profit. There was no basis for these projections.

### False Statements Regarding Operations and Customer Contracts

23.   Ellis and Seidel deceived investors by portraying Sederon as a profitable and successful business. The defendants told investors that Sederon had more than 2,000 home maintenance customers and that business was growing at an annual rate of 20 percent. In reality, the company could not perform the promised services agreed to under the customer contracts, generated little revenue, and was unable to pay its expenses. The actual number of home maintenance contracts was approximately 200, and existing customers canceled their contracts at nearly the same rate at which Sederon gained new customers.

### Misuse of Investor Proceeds

24.   Ellis and Seidel also told prospective investors that their investments would be used for, among other things, the expansion of operations through the acquisition of a real estate agency, a home renovation business, and the opening of new branches to accommodate the company's purported rapid growth. However, the defendants did not use investor proceeds as promised. Instead, they used the proceeds primarily to pay day-to-day expenses, interest payments on loans, salaries, and other accumulated debt.

25.   When investors raised questions about the company's operations and sought financial information, Ellis and Seidel repeated their lies about the company and lulled investors with false promises that they would provide financial statements within 60 days, which never occurred.

**Failure to Disclose Criminal History and Past Securities Law Violations**

26.     Ellis and Seidel never informed investors of Ellis' criminal history, his Commission injunction for securities fraud, or the Pennsylvania Securities Commission cease-and-desist order even though the violations were directly related to his role in securities offerings. Instead, Ellis and Seidel sought to evade disclosing his history by renaming the company as Sederon, appointing Seidel to President and CEO, and ensuring that Ellis held no official title with the company.

## CLAIMS FOR RELIEF

### FIRST CLAIM

### Violations of Sections 5(a) and 5(c) of the Securities Act

27.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 26, inclusive, as if they were fully set forth herein.

28.     As a result of the conduct alleged herein, defendants Ellis and Seidel, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

29.     No valid registration statement has been filed with the Commission or has been in effect with respect to any offering or sale alleged herein.

30.     By engaging in the foregoing conduct, defendants Ellis and Seidel violated, and unless enjoined and restrained will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## SECOND CLAIM

### Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

31.   The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 30, inclusive, as if they were fully set forth herein.

32.   Defendants Ellis and Seidel, by engaging in the conduct described above, knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

(a)   employed devices, schemes or artifices to defraud;

(b)   made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

(c)   engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

33.   By engaging in the foregoing conduct, defendants Ellis and Seidel violated, and unless enjoined and restrained will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## THIRD CLAIM

### Section 17(a) of the Securities Act

34. The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 33, inclusive, as if they were fully set forth herein.

35. Defendants Ellis and Seidel, by engaging in the conduct described above, knowingly or recklessly, in connection with the offer or sale of securities, by the use of the means or instruments of transportation, or communication in interstate commerce or by use of the mails, directly or indirectly:

(a) employed devices, schemes or artifices to defraud;

(b) obtained money or property by means of untrue statements of material facts, or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

(c) engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

36. By engaging in the forgoing conduct, defendants Ellis and Seidel violated, and unless enjoined and restrained will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

### I.

Permanently restraining and enjoining defendants Ellis and Seidel and their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from violating, directly or indirectly, Sections 5(a), 5(c) and 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

### II.

Ordering defendants Ellis and Seidel to disgorge all ill-gotten gains derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

### III.

Pursuant to Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act, prohibiting defendants Ellis and Seidel from acting as officers or directors of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act; and

## IV.

Ordering such other and further relief as this Court may deem just and appropriate.

Respectfully submitted,

_____
Brendan McGlynn
Daniel M. Hawke
Elaine C. Greenberg, PA Bar No. 48040
Brendan P. McGlynn, PA Bar No. 77271
Jack C. Easton
G. Jeffrey Boujoukos, PA Bar No. 67215

Attorneys for Plaintiff:

**SECURITIES AND EXCHANGE COMMISSION**
Philadelphia Regional Office
701 Market Street, Suite 2000
Philadelphia, PA  19106
Telephone: (215) 597-3100
mcglynnb@sec.gov

Dated:  March 7, 2012